**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Stevens, | ) No. CV-05-1987-PCT-FJM |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Mohave County, et al., | ) |
| Defendants. | ) |

The court has before it defendants' second motion for summary judgment (doc. 72), plaintiff's response (doc. 85), and defendants' reply (doc. 89). We also have before us plaintiff's motion for an extension of time to file a response (doc. 83) and motion for a hearing on the motion for summary judgment (doc 91).

**I**

On September 26, 2006, we granted defendants' motion for partial summary judgment (doc. 69), dismissing all but the § 1983 claim against Mohave County ("County") and the claims against Sharon Tatum. We granted defendants' motion to file a second motion for summary judgment (doc. 77), and defendants now move for summary judgment on the § 1983 claim against the County. The gravamen of plaintiff's § 1983 claim is that his arrests on October 29, 2003 and December 10, 2003, were without probable cause, and in

1 furtherance of the County's policy or custom that police responses to domestic violence calls
2 will result in arrest, regardless of probable cause.

3     "[A] local government may not be sued under § 1983 for an injury inflicted solely by
4 its employees or agents." Monell v. Dep't of Soc. Servs, 436 U.S. 658, 694, 98 S. Ct. 2018,
5 2037 (1978). Instead, an entity is liable under § 1983 only for constitutional violations
6 occurring pursuant to an official government policy or custom. Id. at 690-91, 98 S. Ct. at
7 2036. The plaintiff must show not only a deprivation of his constitutional rights, but also that
8 the County itself was a "moving force" behind that deprivation. Id. at 694, 98 S. Ct. at 2038.

9     In order to support his § 1983 claim, plaintiff contends that his constitutional rights
10 were violated when Sgt. Ron Weber arrested him twice without probable cause. Probable
11 cause exists when "the facts and circumstances within [the officers'] knowledge and of which
12 they had reasonably trustworthy information were sufficient to warrant a prudent man in
13 believing that the [plaintiff] had committed or was committing an offense." Hart v. Parks,
14 450 F.3d 1059, 1065-66 (9th Cir. 2006) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct.
15 223 (1964)) (alternations in original). Here, the first question we address is whether a
16 prudent person in Sgt. Weber's position could have believed that plaintiff was committing
17 a crime on October 29th and December 10th.

**II**

19     As to the first arrest, Sharon Tatum made a 911 call reporting "domestic violence" at
20 her residence at 3055 Atherton Drive. She stated that plaintiff had been violent, was drinking
21 and breaking things in the home, had access to weapons, and that she had locked herself and
22 her child in a bedroom. Sgt. Weber asserts that when he arrived at the scene, he spoke with
23 Tatum, who informed him that she had an argument with plaintiff and that he became irate.
24 He grabbed her by the arm, threatened to disable her car and was throwing things in the
25 kitchen. Sgt. Weber also spoke with Tatum's five-year-old son, Jordan, who confirmed that
26 plaintiff and Tatum were arguing, and that plaintiff tried to get into the bedroom.

27     While the totality of these circumstances would support probable cause, plaintiff,
28 nevertheless, argues that he was arrested before Weber spoke to Tatum or her son, or

1  otherwise conducted an investigation. He contends that he was arrested within minutes of
2  Sgt. Weber's arrival, when he was handcuffed and instructed to sit on the sofa. The County
3  argues, in contrast, that plaintiff was only detained initially, albeit in handcuffs, but was not
4  arrested until after Weber questioned the witnesses. The County contends that placing
5  plaintiff in handcuffs was not tantamount to an arrest where Sgt. Weber was investigating
6  a report of domestic violence, was told plaintiff had been violent and was intoxicated, and
7  knew plaintiff had access to guns. We agree that under these circumstances Sgt. Weber
8  could have reasonably believed that a detention with handcuffs was necessary to protect his
9  own safety or the safety of others. See Alexander v. County of Los Angeles, 64 F.3d 1315,
10 1320 (9th Cir. 1995) (the use of handcuffs does not convert a detention into an arrest where
11 the "officer reasonably believes force is necessary to protect his own safety or the safety of
12 the public").

13 Therefore, we conclude that under the totality of the circumstances, a prudent person
14 in Sgt. Weber's position could have reasonably concluded that there was a fair probability
15 that plaintiff had committed domestic violence. Because the October 29, 2003 arrest was
16 supported by probable cause, it cannot serve as the basis for a § 1983 claim.

**III**

18 On December 10, 2003, Tatum made a second 911 call, stating that plaintiff was on
19 her property at 3055 Atherton Drive, in violation of a protective order. Sgt. Weber was again
20 dispatched to investigate. When he arrived at the scene, plaintiff was approximately 25 yards
21 away from the house, near a barn, loading items into his truck. Tatum showed Sgt. Weber
22 a court order prohibiting plaintiff's presence at 3055 Atherton. Plaintiff, however, told Sgt.
23 Weber that he was on property with a separate address of 3075 Atherton Drive and that he
24 had a modified court order, plat map, and county assessor's records proving that he had a
25 right to be there. There were no property lines or markers between the house and the barn,
26 nor other indication of property boundaries. According to plaintiff, Sgt. Weber refused to
27 look at the documents, but instead immediately arrested him for "interfering with judicial
28 proceedings." Weber counters that plaintiff did not offer the plat map or otherwise attempt

1    to prove that he was not violating the protective order until after he was taken to jail. Instead,
2    Weber relied on Tatum's protective order and plaintiff's presence on property that appeared
3    to be 3055 Atherton Drive to conclude that plaintiff had violated the protective order.

**IV**

5    While the disparate versions of events create a question of fact on the issue of
6    probable cause related to the second arrest, plaintiff's claim nevertheless fails because he is
7    unable to establish that the arrest occurred as a result of the County's custom or policy of
8    making arrests in response to domestic violence calls, regardless of probable cause. The
9    three pieces of evidence offered to establish this custom or policy are insufficient to create
10   an issue of fact that such a policy exists. First, plaintiff presents his own affidavit which
11   avows that Mohave County Sheriff Tom Sheahan told him that when his deputies respond
12   to a domestic violence call "someone is going to jail." But there is no mention that arrests
13   occur regardless of probable cause. He also presents a transcript of a recorded telephone call
14   in which Sheriff Sheahan allegedly states that someone would "go right to jail . . . if there is
15   any inklings [sic] of a crime." PSOF, Ex. N at 5-6. But, again, the statement does not
16   indicate that arrests occur regardless of probable cause, but only with some evidence that a
17   crime has occurred.

18   Finally, plaintiff presents an affidavit by former Mohave County Deputy Public
19   Defender, James McGee, which avows that during his employment with Mohave County he
20   "came to understand by common knowledge and casual conversation with other county
21   officials that it is the practice of the Mohave County Sheriff's Department when responding
22   to a call pertaining to domestic violence to effect an arrest regardless of the actual existence
23   of probable cause." PSOF, Ex. M. This affidavit is insufficient under Rule 56(e), Fed. R.
24   Civ. P., which requires that affidavits are based on personal knowledge and set forth such
25   facts as would be admissible in evidence. "Casual conversation with other county officials"
26   is inadmissible hearsay, which may not be considered on summary judgment. Moreover,
27   without setting forth any specific facts within his personal knowledge, McGee simply states
28   that he is aware of the County's policy through "common knowledge." This is insufficient

under Rule 56(e), Fed. R. Civ. P.  See Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 738 (9th Cir. 1979) (holding that "common knowledge" does not satisfy the requirement of "personal knowledge" under Rule 56(e)).  "If, indeed, evidence was available to underpin the conclusory statement, Rule 56 required [plaintiff] to come forward with it." Id. (quotation omitted).

## V

Based on the foregoing, we conclude that plaintiff has failed to establish that his constitutional rights were violated pursuant to an official government policy or custom. Accordingly, **IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 72).  **IT IS ALSO ORDERED GRANTING** plaintiff's motion for extension of time (doc. 83) and **DENYING** plaintiff's motion for hearing (doc. 91).

DATED this 4th day of December, 2006.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge